UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DONALD WATTS, III, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | ) Civil No. 08-290-B-W |
| | ) |
| STATE OF MANE, | ) |
| | ) |
|     Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Donald Watts was convicted by a Maine jury of charges of sexual misconduct. He has filed a 28 U.S.C. § 2254 petition and his grounds are limited to two contentions. Watts believes that Juror 26 was biased by personal experiences that she failed to disclose when asked to do so and that Juror 19, who reported Juror 26's failure to disclose, had mental "inabilities." Watts successfully pressed a motion for a new trial in front of the trial judge but the Maine Law Court, reversing the trial court's order, rejected his juror bias argument.[1] The State of Maine has filed a motion seeking summary dismissal of Watts's 28 U.S.C. § 2254 petition. I recommend that the Court deny Watts 28 U.S.C. § 2254 relief for the following reasons.

*Discussion*

In its decision overturning the trial court's grant of a new trial, the Maine Law Court summarizes the factual background of the charges against Watts:

> The victim, then seventeen years old, lived with her sister, brother-in-law, and their three children in Topsham. Watts was a friend of the victim's brother-in-law, and had known the victim for about one year. Watts attended a party one night at

---

[1] If Watts intends to raise a different legal claim or factual basis for such a claim than he did raise in his pleadings before the Maine Law Court pertaining to his motion for a new trial then he has not fully exhausted these claims as required by 28 U.S.C. § 2254(b). Furthermore, there is some question as to whether or not Watts adequately presented his claim concerning one of the jurors to the Maine courts for purposes of obtaining 28 U.S.C. § 2254 review. However, I do address the merits of that claim at the close of this recommended decision.

their apartment, where approximately a dozen people consumed a significant amount of alcohol and listened to loud music. The victim became intoxicated after consuming at least one coffee cup of straight vodka on an empty stomach.

While playing cards with other partygoers, the victim became sick. She stopped playing cards and went to the upstairs bathroom, where she vomited and fell asleep on the bathroom floor. Watts later found the victim and helped her to her room. She went to bed, Watts shut her bedroom door and left, and she fell asleep.

Later, someone knocked on the victim's bedroom door, came in, sat on her bed, and had a conversation with her. She was unaware at the time that it was Watts with whom she was speaking. Watts asked her if she was ready to come back downstairs to the party. Watts tried to help the victim go downstairs, but she was physically unable to do so. Watts then started kissing her on the neck. She told him "no." He removed her pants, and she told him to stop. He then performed oral sex on her, and she did not tell him to stop. He then got on top of the victim and had vaginal intercourse with her. She again told him to stop, but he did not. She tried to push him off, but was unable to do so. She testified that, at one point, she "blanked out." When Watts finished, he turned on the lights and left the room. At this point, the victim realized that Watts was the perpetrator.

State v. Watts, 2006 ME 109, ¶¶ 4-6, 907 A.2d 147, 148-49.  "Watts denied the allegations of the victim, and testified at trial that the sexual activity was consensual." 2006 ME 10, ¶ 8, 907 A.2d at 149.

*Applicable 28 U.S.C. § 2254 Standards*

This Court can review a 28 U.S.C. § 2254 claim only if Watts "has exhausted the remedies available in the courts of the State"; or unless "there is an absence of available State corrective process; or … circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A),(B).  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  Id § 2254(b)(2).[2]

---

[2]     "A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."  Id. § 2254(b)(3).

With respect to Watts's 28 U.S.C. § 2254 challenge to the conduct of the two jurors, relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim":

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).  See also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006); Smiley v. Maloney, 422 F.3d 17 (1st Cir. 2005); Mello v. DiPaulo, 295 F.3d 137, 142-43 (1st Cir. 2002); Vieux v. Pepe, 184 F.3d 59, 63-64 (1st Cir. 1999).

The Superior Court Justice and the Maine Law Court based their legal conclusions apropos Watts's new trial motion on certain factual findings.  "[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  Watts has "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. See Wainwright v. Witt, 469 U.S. 412, 429 (1985)("The trial judge is of course applying some kind of legal standard to what he sees and hears, but his predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record. These are the 'factual issues' that are subject to § 2254(d).").  As the First Circuit explained in Sleeper v. Spencer:

> In reviewing a habeas corpus petition under AEDPA, a federal court will presume that the state court's findings of fact are correct. For this purpose, the term "facts" refers to "basic, primary, or historical facts," such as witness credibility and recitals of external events. Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir.2001) (quoting Bryson v. Ward, 187 F.3d 1193, 1211 (10th Cir.1999)). The habeas petitioner may defeat the presumption of correctness only with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); see also Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir.2002). The presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court,

3

>makes the findings of fact. Norton v. Spencer, 351 F.3d 1, 6 (1st Cir.2003)
>(quoting Sumner v. Mata, 455 U.S. 591, 593 (1982)).

510 F.3d 32, 37-38(1st Cir. 2007).[3]

### *Watts's Claims pertaining to Jurors 19 and 26*

The jurors who sat on Watts's panel were required to complete a confidential questionnaire pertaining to their ability to remain objective and impartial in a case involving sexual abuse and sexual assault. 2006 ME 109, ¶ 3, 907 A.2d at 147. Each juror had to answer the following five yes or no questions under oath:

>1. Have you or a close relative or friend ever been a victim of sexual abuse or sexual assault?
>2. Have you or a close relative or friend ever been subjected to a charge of sexual abuse or sexual assault or been investigated for sexual abuse or sexual assault?
>3. Have you and other family members ever been separated from one another due in whole or in part to sexual abuse or sexual assault or claims of sexual abuse or sexual assault?
>4. Have you had any experiences in life that would make [it] difficult or impossible for you to consider evidence in a case of alleged sexual abuse or sexual assault objectively and impartially?
>5. Is there any reason why you could not consider evidence in a case of alleged sexual abuse or sexual assault objectively or impartially?

2006 ME 109, ¶ 3 n.1, 907 A.2d at 147 n.1. "Watts and the State agreed that any 'yes' answer would exclude a juror from the pool." 2006 ME 109, ¶ 3, 907 A.2d at 147.

Watts's motion for a new trial relied on an affidavit from Juror 19, "alleging that one of his fellow jurors, Juror 26, committed misconduct during the voir dire by dishonestly or inaccurately answering the questionnaire." 2006 ME 109, ¶ 10, 907 A.2d at 14.

---

[3] If Watts failed to develop the factual basis of a claim in State court proceedings, he is not entitled to an evidentiary hearing in this Court unless his claim relies on: "**(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence." Id. § 2254(e)(2)(A). Watts must also demonstrate that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [Watts] guilty of the underlying offense." § 2254(e)(2)(B). Watts is not attempting to introduce new evidence in this 28 U.S.C. § 2254 proceeding.

> Juror 19's affidavit stated that, during the end of deliberations and prior to the jury's final vote to convict Watts, Juror 26 "told the story of her own victimization, or sexual abuse." This incident left Juror 19 "greatly disturbed," and, because his "conscience [had] been bothering [him]," he met with an attorney to discuss the situation. Juror 19 and his attorney then met with Watts's attorney. Subsequently, Watts filed his motion for a new trial alleging bias on the part of Juror 26.

2006 ME 109, ¶ 10 n.2, 907 A.2d at 14 n2.

Over the State's objection, the court held a post-trial hearing. The Maine Law Court provided the following summary:

> At the hearing on the motion for a new trial, the attorney for the State told the court that her office received a message from Juror 26 on April 27. The attorney for the State indicated that when she returned the call, they had a brief conversation. The attorney for the State said that Juror 26:
>> talked about ... some personal experiences that she had and didn't go into any more detail than that.... [S]he did indicate to me that she had told [her fellow jurors] something about a personal experience and did not reveal whether it was sexual ....
>
> When questioned by the court, the attorney for the State indicated that "[Juror 26] did not go into any detail about what this experience was."
> After speaking with both attorneys, the court questioned Juror 26. Juror 26 indicated that when she was seventeen years old, she was at a party drinking alcohol, and engaged in a consensual sexual experience with a teenage boy, who she thought was approximately eighteen years old. She accompanied the boy to a parked car, and they started kissing and touching each other. He eventually placed his hand down her pants, and this physical contact hurt her. This contact included digital vaginal penetration, which caused bleeding and required medical treatment afterward. When the touching hurt her, however, she told him to stop, and he did stop. She did not consider herself to be a victim of sexual abuse or sexual assault. She also testified that she did not consider her experience as a teenager to have affected her objectivity or impartiality in reaching a verdict in Watts's case. She told the court that she never even thought about this sexual experience until she was in the jury room. It was when the other jurors discussed similar life experiences involving drinking alcohol at parties when they were young that Juror 26 remembered this event, and then told the deliberating jurors about her experience.
> When the court questioned Juror 19, he testified that the outcome of the 2004 Presidential Election had caused him to suffer from anxiety, insomnia, and depression, and he did not feel like his "normal, feisty self" during the deliberations. If he had not been suffering from these conditions during the deliberations, he stated that he "probably would have said no and attempted to

5

> hang the jury." He also testified that Juror 26 revealed that what had happened to her as a teenager went further than she wanted it to, and that she had to stop it somehow. Although Juror 19's affidavit stated that Juror 26 "told the story about her own victimization, or sexual abuse," Juror 19 admitted that Juror 26 never stated that she had been a victim, or that she had been sexually abused. Rather, that was Juror 19's own characterization of Juror 26's sexual experience.
>   Following the hearing, the court found that Juror 26 incorrectly and dishonestly answered questions 4 and 5, that Juror 26 was biased, and that she could not have forgotten her past sexual experience during voir dire because she "felt strongly enough about the incident to bring it up during jury deliberations." The court found that Juror 26 should have revealed her prior sexual experience by answering "yes," and that she had "more than a passing interest in the outcome of this case," as evidenced by her telephone call to the attorney for the State to congratulate her on Watts's conviction. Based on these findings, the court granted Watts's motion for a new trial.

2006 ME 109, ¶¶ 11-14, 907 A.2d at 149-50 (footnotes omitted).

The Maine Law Court prefaced its discussion of Watts's claim with the caution: "The law strongly disfavors inquiry into the deliberations of juries." 2006 ME 109, ¶ 15, 907 A.2d at 150 (citing State v. Fuller, 660 A.2d 915, 917 (Me.1994)). It characterized Maine Rule of Evidence 606(b) as an expression of that policy. 2006 ME 109, ¶ 15, 907 A.2d at 150. The Law Court then reasoned:

> To protect the privacy of the jury room, we long ago articulated several important public policy considerations that militate against permitting jurors to impeach their verdicts, including:
> > (1) the need for stability of verdicts; (2) the need to conclude litigation and desire to prevent any prolongation thereof; (3) *the need to protect jurors in their communications to fellow jurors made in the confidence of secrecy of the jury room;* (4) the need to save jurors harmless from tampering and harassment by disappointed litigants; (5) *the need to foreclose jurors from abetting the setting aside of verdicts to which they may have agreed reluctantly in the first place or about which they may in the light of subsequent developments have doubts or a change of attitude.*
> Patterson v. Rossignol, 245 A.2d 852, 857 (Me.1968) (emphasis added); see also Cyr v. Michaud, 454 A.2d 1376, 1383 n. 3 (Me.1983) (noting that the policy considerations set out in Patterson are now codified in Rule 606(b)).
>   Courts should inquire into the validity of a jury verdict only in "very limited circumstances," Fuller, 660 A.2d at 917, and should be very cautious in overturning jury verdicts. Although serious allegations of juror bias in the context

6

of juror dishonesty or inaccuracy in answering a voir dire questionnaire is one such limited circumstance when the court, within its discretion, may proceed with a post-trial hearing to inquire into potential juror bias, a court must make such an inquiry with great caution. See State v. Chesnel, 1999 ME 120, ¶¶ 29, 31, 734 A.2d 1131, 1141; M.R. Evid. 606(b). Unless "[i]t is ... *sufficiently clear* that [a juror's] nonanswer [to a voir dire question] is apparently a dishonest or incorrect answer to the question *in the context in which it was asked,*" there is an "insufficient basis" to impeach a jury verdict. Chesnel, 1999 ME 120, ¶ 31, 734 A.2d at 1141 (emphasis added) (noting the specificity requirement of voir dire questions). In this case, when viewed in the proper context, the affidavit and testimony of Juror 19, and the testimony and voir dire answers of Juror 26, provide an insufficient basis on which to set aside the jury verdict.

      The questions asked of the jurors in the questionnaire were in the context of identifying those jurors who could not sit on the case with fairness and impartiality. Those jurors who would most likely have been unable to sit fairly and objectively in this case were jurors who had been the victims of sexual abuse or sexual assault. Juror 26 did not consider herself to have been the victim of sexual abuse or a sexual assault, and never characterized the limited sexual experience she related to her fellow jurors as sexual abuse or as a sexual assault, which was what the questionnaire was directed toward. Rather, the experience that Juror 26 related to her fellow jurors was consensual, albeit uncomfortable, and an experience that would not be uncommon among teenagers and young adults. Moreover, during his closing argument, Watts's attorney repeatedly implored the members of the jury to call on their own sexual experiences in assessing the credibility of the witnesses. That is exactly what Juror 26 did.

      Juror 19 "agreed reluctantly in the first place" to vote to convict Watts and later had "doubts or a change of attitude." Patterson, 245 A.2d at 857. It was this same Juror 19, and not Juror 26, who characterized Juror 26's experience as being sexual abuse or sexual assault. Juror 19 testified as to his concern with his own failure to vote to acquit Watts and create a hung jury. He also testified about his depression, insomnia, and the anxiety he felt following the outcome of the Presidential election-an election that occurred more than five months prior to the trial. This is the very kind of attempt by a disgruntled juror to set aside a verdict that Rule 606(b) is designed to prevent. See Id..

      The evidence on which the trial court relied to make its finding of bias is simply insufficient, and the court misapprehended the meaning of the evidence. That a juror agrees with a verdict of guilty for which that juror voted, or compliments the prosecuting attorney, as expressed in Juror 26's phone call, *after* a verdict is rendered, does not mean that the juror did not objectively come to the conclusion of guilt after hearing the evidence and participating in the jury deliberations. Cf. State v. Boyce, 1998 ME 219, ¶ 8, 718 A.2d 1097, 1100 (information gained or opinions formed by judge based on facts presented in same proceeding do not constitute a basis for recusal on the grounds of bias except in extraordinary circumstances). Similarly, the answers of Juror 26 to the questionnaire have to be viewed from the perspective of *when* they were given-

7

> before Juror 26 knew about the facts of the case revealed through the testimony, and before she and her fellow jurors were strongly urged by defense counsel to view the evidence from the perspective of their own sexual experiences. There is an insufficient basis to support a finding of the kind of bias to justify the overturning of the jury's verdict in this case. See Chesnel, 1999 ME 120, ¶ 29, 734 A.2d at 1140 (a finding of bias must be grounded in more than speculation).
>
> Rule 606(b) protects jurors in their communication to fellow jurors made in the confidence of the jury room, and prevents the impeachment of jury verdicts by jurors who later have a change of heart. Patterson, 245 A.2d at 857. Both of those factors are present in this case. If Juror 19 felt strongly that Watts was not guilty, he should not have voted to convict Watts. Juror 19's remorse, and Juror 26's discussion of her prior consensual sexual experience during the jury's deliberations, coupled with her congratulatory phone call to the attorney for the State *after* the case was completed, provide an insufficient basis to overturn the verdict in this case. See Chesnel, 1999 ME 120, ¶¶ 29, 31, 734 A.2d at 1140-41. Consequently, the court erred in granting Watts's motion for a new trial.

2006 ME 109, ¶¶ 16-21, 907 A.2d 147, 150-52.

Attached to Watts's 28 U.S.C. § 2254 petition are Pages 2, 11, and 19 from his brief on the state's appeal of the trial court's order granting Watts's motion for a new trial. (Doc. No. 1 at 17-19.) It is not at all clear why he selected these particular parts of the brief in support of his 28 U.S.C. § 2254 claims. In these pages Watts does assert: "In this case where the defendant is charged with Gross Sexual Assault a non-disclosure of a bias related to sexual behavior of any sort strikes immediately at the heart of Mr. Watts's constitutional right to a trial before an impartial jury." (Id. at 11.) He cites to article 1, section 6 of the Maine Constitution. (Id.) It is clear that Watts's intention is to reassert his claims made in his motion for a new trial in this 28 U.S.C. § 2254 proceeding.[4]

The State argues that the two grounds Watts raises in this § 2254 petition are purely state law issues that are not cognizable in a federal habeas proceeding. It further maintains that, if

---

4   See cf. Galdamez v. Keane, 394 F.3d 68, 76-77 (2d Cir. 2005) ("Because the briefs fairly presented the federal claims, and Galdamez's leave application reasonably could be construed only as a request for further appellate review of all issues in the attached briefs, we hold that Galdamez properly exhausted his federal claims before the Court of Appeals.").

Watts meant to raise a federal claim in the state courts, Watts did not sufficiently apprise the Maine Law Court of the federal constitutional nature of his claims in citing only the Maine Constitution.

It is true that Watts must have provided the state courts with an opportunity to address any federal aspect of his claims. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995) and O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)); see also id. at 32 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' "); Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) ("It is, however, clearly inadequate to simply recite the facts underlying a state claim, where those facts might support either a federal or state claim.")(citing Martens v. Shannon, 836 F.2d 715, 717 (1st Cir.1988)).

In his state court brief on his new trial motion, Watts cited to Wainwright v. Witt, 469 U.S. 412 (1985), addressing the standard applicable to challenges of juror impartiality in a capital case, and Patten v. Yount, 467 U.S. 1025 (1984), a case addressing a challenge to a trial court's voir dire determination of juror impartiality. With respect to Wainwright Watts opined: "Like the U.S. Supreme Court in Wainwright the Law Court favors applying a more penetrating analysis [than some states] on the question of jury impartiality." (Appellee Br. at 8.) He noted that in Grover v. Minnette Mills, Inc., 638 A.2d 712, 715 the Maine Law Court quoted

9

McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556 (1984) (Appellee Br. at 10) and described McDonough Power Equipment, Inc. as the "leading Supreme Court opinion" relevant to his case. (id. at 14).[5] And Watts also cited a criminal procedure treatise which examined Supreme Court cases and Federal Rule of Evidence 606(b) in exploring limitations on jury testimony about misconduct/impartiality. (Appellee Br. at 17-18).[6]

In my view, Watts did adequately present his federal constitutional claim to the Maine Law Court in his brief in response to the State's appeal. See generally Dye v. Hofbauer, 546 U.S. 1, 3-5 (2005). Watts's appellee brief, defending the trial court's grant of the motion for a new trial, articulated his claim of a due process violation in the context of his post-verdict challenge to juror impartiality and this is not an argument that needs to be carefully nuanced.

---

[5] Watts further cited Burton v. Johnson, a Tenth Circuit case that reasoned:
> The right to trial by an impartial jury is a fundamental concept of due process. That right, and the duty of strict inquiry into its application, were discussed in Irvin v. Dowd, 366 U.S. 717 (1961), where it was found that pretrial publicity had tainted the jury panel:
>> England, from whom the Western World has largely taken its concepts of individual liberty and of the dignity and worth of every man, has bequeathed to us safeguards for their preservation, the most priceless of which is that of trial by jury.... In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent jurors.... 'A fair trial in a fair tribunal is a basic requirement of due process.' .... In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworn'.... His verdict must be based upon the evidence developed at the trial." (366 U.S. at 1642.). (citations omitted)
>
> While jurors need not be totally ignorant of the facts and issues involved, that fact does not foreclose inquiry into whether there has been a deprivation of due process of law. Irvin v. Dowd, supra, 366 U.S. at 723-24.
>> In a civil case tried in a federal district court, a juror's son had sustained injury in an accident. The juror did not respond to a voir dire inquiry concerning "previous injuries ... that resulted in any disability or prolonged pain or suffering" to a juror's immediate family. The court of appeals found that the failure to respond had prejudiced plaintiffs' right of *peremptory challenge.* On appeal, the Supreme Court found that the fact that a juror might have been peremptorily challenged was not alone sufficient to reverse a conviction, and that in order to be entitled to a new trial in such a situation, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, *and then further show that a correct response would have provided a valid basis for a challenge for cause.*" McDonough Power Equipment v. Greenwood, 464 U.S. 548, 556 (emphasis supplied).

948 F.2d 1150, 1155 (10th Cir. 1991).

[6] See LaFaves, Israel, King, and Kerr,6 Criminal Procedure § 24.9(g) (3d. Ed.).

Compare McGowan v. Warden, Maine State Prison, Civ. No. 07-01-B-W, 2008 WL 4533901, 3-4 (D. Me. Oct. 6, 2008); Cormier v. Maine, Civ. No. 04-112-B-W, 2004 WL 2315275 (D.Me. Oct. 13, 2004). The fact that Watts cited to the Maine Constitution does not nullify a parallel federal claim. See Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005) ("[W]e hold that Jackson exhausted his federal claim because, in this case, the legal standards for his federal and state claims were so similar that by presenting his state claim, he also presented his federal claim.").

With regards to the law that the Maine Law Court applied to Watts's claims, Patterson was heavily relied on by the Maine Law Court in Watts and it is a case that cited to McDonald v. Pless, 238 U.S. 264 (1915) as one of the cases contributing to "the great weight of authority in this country" establishing strict limitations on allowing jurors to impeach their verdicts. Patterson, 245 A.2d at 857.[7]  The Maine Law Court's Watts opinion also relied on State v. Chesnel, 1999 ME 120, 734 A.2d 1131.  Therein the Law Court summarized:

> Rule 606(b) would permit the trial court to inquire about whether Juror B knew of information about Chesnel that, upon inquiry during voir dire, he knew he should disclose and did not disclose. See Clark v. United States, 289 U.S. 1, 9-12 (1933).[8] A post-trial hearing would be the appropriate forum in which the accuracy of a juror's voir dire response and potential bias can be explored. See Robert G. Loewy, When Jurors Lie: Differing Standards for New Trials, 22 Am. J.Crim. L. 733, 737 (1995). To obtain a new trial on an allegation that a juror did not accurately answer a voir dire question, a party must demonstrate that (i) the juror failed to honestly or correctly answer a material question, and (ii) a correct response would have provided a valid basis for a challenge for cause. See McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984); Grover v. Minette-Mills, Inc., 638 A.2d 712, 715 (Me.1994). A new trial would be

---

[7]  Patterson cited "sound considerations of public policy" as compelling this rule. Id.  McDonald v. Pless also referred to public policy.  238 U.S. at 267 ("[T]he weight of authority is that a juror cannot impeach his own verdict. The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils.").

[8]  Clark is an interesting opinion but is not applicable in this case as it dealt with contempt proceedings against a juror for purposefully failing to disclose a bias in favor of the defendants and related misconduct once she was selected as a juror.

11

> ordered only if the nondisclosure prevented the discovery of juror bias as probably, not speculatively existent. See Eckenrode v. Heritage Management Corp., 480 A.2d 759, 764-65 (Me.1984) (citation omitted).

Chesnel, 1999 ME 120, ¶ 29, 734 A.2d at 1140.  And the Superior Court Justice also cited the criteria of Chesnel, expressly noting that it relied on McDonough Power Equipment, Inc., (Me. Superior Ct. Crim. No, 04-200, Decision at 1-2.)

There, then, are two strains of juror impartiality precedents implicated in this Court's 28 U.S.C. § 2254 review of Watts's petition:  one articulating the due process right to an impartial/non-biased jury (a right most commonly asserted and litigated during jury selection), see Morgan v. Illinois, 504 U.S. 719, 727 (1992) ("[D]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment."), and the other line of cases limiting the right of a party to have a member of the jury impeach a final verdict in post-verdict posture, see McDonough Power Equip., Inc., 464 U.S. 548; McDonald, 238 U.S. 264.  This latter line of cases was the focus of the Maine Law Court's adjudication.

So, proceeding on the assumption that Watts adequately apprised the Maine Law Court of the federal nature of his claim, I conclude that he is not entitled to 28 U.S.C. § 2254 relief on his claims concerning the conduct of these two jurors.  I do recognize that the parties had agreed that if any of the jurors had answered yes to any of the five questions then they would have been dropped from the pool, which, simply viewed, is a showing "that a correct response" by Juror 26 "would have provided a valid basis for a challenge for cause." McDonough Power Equip., Inc., 464 U.S. at 556.  That said, this arrangement by the parties was in the context a well-stocked jury pool and the issue of the propriety of this across-the-board agreement was never tested in terms

12

of the legal standards justifying a challenge for cause.  The Maine Law Court has concluded that the factual predicate of Watts's challenge was insufficient as to either juror to justify overturning the verdict.  That is, it looked at the facts in terms of the actual impact Juror 26's undisclosed experience could have had on her role as a juror and it found that the posited bias was too hypothetical and her failure to disclose unintentional.

      This case does raise questions about how a federal court should address ostensibly conflicting findings of fact as between a state trial court that is making first-hand credibility determinations and a state appellate court that reviews the record of that proceeding and comes to a different factual conclusion that impacts the legal disposition.  See cf. McGowan, 2008 WL 4533901 at 8 ("If the Maine Law Court had rested its decision on the performance prong of Strickland this might have implicated the post-conviction court's factual finding apropos counsel's decision making and a client's own participation in the defense. These findings could well have turned on credibility determinations that the Superior Court justice was uniquely positioned to make.  Under either the Maine Law Court's or the First Circuit's appellate standard of review these determinations would be reviewed for clear error.  This Court's review of these factual findings would be governed by 28 U.S.C. § 2254(d)(2) and (e)(1).  As the last reasoned decision, this Court would then owe deference to the Maine Law Court's factual 'findings,' one step removed, and these would be presumptively correct, at least that is what Norton v. Spencer, 351 F.3d 1, 6 (1st Cir.2003) counsels."). The trial court explained its decision to grant the motion for a new trial as follows:

> Juror # 26 answered the confidential jury questionnaire on April 5, 2005, the day of jury selection.  She answered no to all five questions.  The important questions as far as this case is concerned are questions #1, #4, and #5.
> Question #1 asks a juror if she ever was a victim of sexual abuse or sexual assault.  She answered no. She indicated during the post trial hearing that when

she was seventeen years old, she was on a date and her date made inappropriate physical contact with her including vaginal penetration. She indicated that she told him to stop and he did. Although she related this story, she did not consider what happened to her as a seventeen year old teenager as sexual abuse or sexual assault. For this reason she stated that she answered no on question one.

Question #4 asks jurors if they have had any experiences in life that would make it difficult or impossible for them to be objective or impartial in a case of sexual abuse and assault. Notwithstanding her experiences as a teenager, she stated on the stand in the post trial hearing that she could be objective and impartial and that is why she answered no to question #4.

Question #5 asks if there is any reason why a juror could not consider the evidence in this type of case objectively and impartially. Again she answered no. Again, during the post trial hearing she indicated that she could be fair and impartial and that is why she answered no on that question.

After considering this questionnaire, it is important to note that the introduction to the questionnaire states the following:

> "…The court must determine if you have any experience or opinion that might affect you objectivity and impartiality …."

This court finds that the juror incorrectly and inaccurately answered questions #4 and #5. Question #1 is not so clear because in her mind the actions of her date did not constitute sexual abuse and sexual assault. She felt that it was not an assault because he stopped when she asked him to stop.

In the <u>Chesnel</u> case, the Law Court intimated that the answer has to be "incorrect or dishonest":

> "There is insufficient basis to find that juror B <u>incorrectly or dishonestly</u> answered the very vague questions posed. Without a sufficient record to indicate that the juror improperly answered a voir dire question …" @ 114 (Emphasis added)

The court did not differentiate between an incorrect and a dishonest response. The United States Supreme Court case of <u>McDonough Power Equipment v. Greenwood</u>, stated the following:

> "A party must first demonstrate that a juror failed to answer honestly a material question on voir dire". @ 556.

A concurring opinion by Brennen and Marshall set out a slightly different standard:

> "To be awarded a new trial, a litigant should be required to demonstrate that the juror incorrectly responded". @ 557 and 558.

The concurring decision indicates that whether the answer was honest or dishonest or whether the answer was inadvertent or unintentional is a factor to be considered in determining in whether there was bias. Bias of a prospective juror may be implied, since jurors rarely admit to actual bias.

This court finds that the juror not only "incorrectly" responded to questions 4 &5, but also "dishonestly" answered the questions. The reason that this court finds that the juror incorrectly and dishonestly answered questions #4 and #5 are the following:

>	(1) The juror felt strongly enough about the incident to bring it up during jury deliberations.  It was not an item that she could have inadvertently forgotten during the voir dire process.
>	(2) The jury questionnaire very clearly indicated that it was this very type of experience it was trying to illicit from the jurors.  Not only the questions themselves, but also the introduction to the questions made it very clear that the court wanted this type of experience disclosed by jurors.
>	(3) Following the verdict, the juror called the assistant district attorney to congratulate her on the conviction.  This shows more than a passing interest in the outcome of this case.  In addition, she shared with the assistant district attorney her own personal experience, although she did not go into detail with the assistant district attorney.
>	Because of these facts, the court finds that she did not honestly answer the voir dire questions.  Notwithstanding her indication that she could be fair and impartial, this court finds that she failed to disclose a bias that she had involving this type of case.  A court is not bound by a juror's assurance that she could be impartial.  State v. Lowry, 2003 ME 38, 819 A.2d 331.

 (Me. Superior Ct. Crim. No, 04-200, Decision at 2 -4.)

The Superior Court Judge was not so much doubting the credibility of Juror 26 as drawing inferences from the fact that she brought the incident up during deliberations and that she made a call to the prosecuting attorney after the verdict.  The judge made it clear that despite her testimony he was making a finding of bias by implication.  The Maine Law Court rejected these findings of implied bias.  This conclusion vis-à-vis the improvidence of granting the motion for a new trial rested on its determination that there would not have been a sustainable ground for the defense to challenge Juror 26 had she disclosed her teenage encounter at voir dire.

With respect to this sub-layer of this inquiry, the Supreme Court explained in Irvin v. Dowd:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. Spies v. People of State of Illinois, 123 U.S. 131; Holt v. United States, 218 U.S. 245; Reynolds v. United States, [98 U.S. 145 (1878)].

15

> …. As stated in Reynolds, the test is 'whether the nature and strength of the opinion formed are such as in law necessarily * * * raise the presumption of partiality. The question thus presented is one of mixed law and fact * * *.' At page 156 of 98 U.S. 'The affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside * * *. If a positive and decided opinion had been formed, he would have been incompetent even though it had not been expressed.' At page 157 of 98 U.S.

366 U.S. 717, 722-23 (1961).[9] See generally Morgan, 504 U.S. 719; McDonough Power Equip., Inc., 464 U.S. 548; see also United States v. Sherman, 551 F.3d 45, 52 (1st Cir. 2008) ("The record reveals that the Magistrate Judge asked a series of questions designed to identify bias, excused those veniremen who demonstrated reluctance or an inability to be impartial, and appropriately deferred an explanation of constitutional protections for criminal defendants to the district court's jury instructions.").

The Supreme Court has just reiterated the strict limits on § 2254 relief in Waddington v. Sarausad, addressing the state courts' adjudication of a challenge to accomplice liability jury instructions:[10]

> Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, a federal court may grant habeas relief on a claim "adjudicated on the merits" in state court only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U. S. C. §2254(d)(1). Where, as here, it is the state court's application of governing federal law that is challenged, the decision " 'must be shown to be not only erroneous, but objectively unreasonable.' " Middleton v. McNeil, 541 U. S. 433, 436 (2004) *(per*

---

[9] In a sense the Maine Law Court did not make new factual findings or credibility determinations. Interestingly, with regards to this aspect of review, the Supreme Court indicated in Irvin: "As stated in Brown v. Allen, 344 U.S. 443, 507, the 'so-called mixed questions or the application of constitutional principles to the facts as found leave the duty of adjudication with the federal judge.' It was, therefore, the duty of the Court of Appeals to independently evaluate the voir dire testimony of the impaneled jurors." 366 U.S. at 723.  In this case, rather than answers to voir dire we have the post-trial testimony of the two jurors.
     I have already highlighted the predicament of reviewing two different interpretations of the facts by two levels of state courts given that the federal court's 28 U.S.C. § 2254(e)(1) marching order is to give deference to "a" state court's  factual findings at all costs.

[10] Like the issue of juror impartiality, this question of jury instructions was a trial court decision with constitutional implications.

16

*curiam)* (quoting Yarborough v. Gentry, 540 U. S. 1, 5 (2003) *(per curiam))*; see also Schriro v. Landrigan, 550 U. S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold").

__ U.S. __, 2009 WL 129033, *8 (Jan. 21, 2009). I suppose it might be arguable, given the Superior Court's opposing conclusion, that the Maine Law Court's resolution of the Juror 26 challenge was incorrect or erroneous. It is not, however, an "objectively unreasonable" application of McDonough Power Equipment, Inc..

With respect to Juror 19, the Superior Court did not address Juror 19 as a distinct issue. In the brief defending the Superior Court's decision to the Maine Law Court, Watts did not raise this as a distinct claim. It appears that this ground as a claim distinct from the Juror 26 ground is not properly exhausted. See Baldwin, 541 U.S. at 29. However, the Maine Law Court did briefly address the issue and a 28 U.S.C.§ 2254 claim can be denied on the merits even if the claim was not properly exhausted. See 28 U.S.C. § 2254(b)(2). The Maine Law Court visited the question of his post-verdict revelations about Juror 19's state of mind at the time of the deliberations and his profession that he would have attempted to hang the jury if he had not been in such a funk about the recent presidential elections. With regards to this juror's post-verdict revelations, "it is safe to say that there is nothing in the nature of the present case warranting a departure from what is unquestionably the general rule, that the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict." McDonald, 238 U.S. at 269

*Conclusion*

For the reasons above I recommend that the Court deny Watts 28 U.S.C. § 2254 relief. I further recommend that a certificate of appealability should not issue in the event Watts files a

17

notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

|  |  |
|---|---|
| February 2, 2009 | /s/ Margaret J. Kravchuk<br>U.S. Magistrate Judge |